**UNITED STATES DISTRICT COURTS**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| **THEODORE WHITE,** ) | |
|    **Plaintiff,** ) | |
| ) | |
|    **v.** ) | **Case No. 26-3138-SEM-DJQ** |
| ) | |
| **TYSON HOLSHOUSER,** *et al.*, ) | |
|    **Defendants.** ) | |

## <u>ORDER</u>

**SUE E. MYERSCOUGH, United States District Judge:**

Plaintiff Theodore White, proceeding *pro se*, is an inmate with the Illinois Department of Corrections currently incarcerated at the Vienna Correctional Center. However, the alleged wrongs committed against Plaintiff that form the basis for this lawsuit stem from his arrest and detention in Montgomery County, Illinois. The Court granted Plaintiff leave to proceed *in forma pauperis*, and the case is now before the Court for a merit review of his claims.

BACKGROUND

Plaintiff alleges that on April 23, 2024, he was in Hillsboro, Illinois, to attend the jury trial of Robert Tarr, which was being held

1

at the Montgomery County courthouse. During the trial's lunch break, Plaintiff went across the street to his "air B&B hotel room" at the Red Rooster Brewery. While in his room, 14 or more officers of the Montgomery County Sheriff's Department barged in and arrested him. Plaintiff alleges that there was no warrant for his arrest and no probable cause to support the arrest. When he asked why he was being arrested, no answer was provided. All of Plaintiff's gold jewelry was stolen from the hotel room, though he does not explain when or by whom.

Plaintiff was subsequently transported to the Montgomery County Jail, where he was held until late at night on April 27, 2024. He was never brought before a court, for a probable cause hearing or otherwise. No charges were ever filed.

Plaintiff's vehicle was towed from the Red Rooster, and no one told him where it was, who towed it, or how he could get it back. Further, his wallet and cell phone were "kept, by Montgomery Co. Sheriff's Dept., because they told me 'they wanted to hold onto them.'" It was approximately six weeks before Plaintiff was able to retrieve those items. Further, upon his release, Plaintiff was "forced

to walk 12 miles" to Litchfield, Illinois, where he arranged for money to be wired to him so that he could pay for a hotel room.

Plaintiff inquired about his wallet and cell phone with a judge when he appeared in court in the apparently unrelated Case No. 2022-CF-388 in Montgomery County. The judge responded that he did not know Plaintiff had even been arrested.

Plaintiff names three Defendants in his Complaint: John Doe, Montgomery County Sheriff Tyson Holshouser, and Montgomery County State's Attorney Andrew P. Affrunti.

Throughout his Complaint, Plaintiff references a singular John Doe, apparently as a stand-in for the 14 or more officers who participated in his arrest. Plaintiff accuses Doe of arresting him without probable cause, in violation of the Fourth Amendment. Plaintiff further alleges that Doe subjected him to cruel and unusual punishment, deprived him of due process, and violated his right to equal protection of the laws.

Plaintiff raises similar claims against Holshouser. Plaintiff maintains that Holshouser knew that there was no probable cause for his arrest or the seizure of his possessions. He contends that

3

Holshouser failed in his obligation to bring Plaintiff before a court for a probable cause determination within a reasonable amount of time following his arrest. Plaintiff alleges that Holshouser's withholding of his wallet and cell phone for six weeks amounted to cruel and unusual punishment. Finally, Plaintiff accuses Holshouser of an equal protection violation.

Plaintiff asserts that Affrunti "was obviously aware" that Plaintiff was arrested without probable cause and was held in jail without charges. "Affrunti knew exactly what was happening," Plaintiff alleges, "because in a town that small he had to know who was arrested[.]" Plaintiff maintains that Affrunti, no less than Holshouser, had a duty to bring Plaintiff before the court in a reasonable amount of time following his arrest.

Analysis

Pursuant to 28 U.S.C. § 1915A, the Court must "screen" Plaintiff's complaint and, through such process, identify and dismiss any legally insufficient claim or the entire action if warranted. A claim is defective if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks

4

monetary relief from a defendant who is immune from such relief."
28 U.S.C. § 1915A. In reviewing a complaint, the court accepts the
factual allegations as true, liberally construing them in the
plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir.
2013). However, conclusory statements and labels are insufficient.
Enough facts must be provided to "state a claim for relief that is
plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422
(7th Cir. 2013) (citation omitted).

Statute of Limitations

"Generally, the failure to file a lawsuit within the applicable
statute of limitations period is an affirmative defense that must be
asserted and proven by a defendant." *Bracey v. Jackson*, 2024 WL
173520, at *1 (C.D. Ill. Jan. 16, 2024); *United States v. Lewis*, 411
F.3d 838, 842 (7th Cir. 2005), as amended on denial of reh'g and
reh'g en banc (Aug. 11, 2005) ("[C]omplaints do not have to
anticipate affirmative defenses to survive a motion to dismiss.").
"The exception occurs where . . . the allegations of the complaint
itself set forth everything necessary to satisfy the affirmative
defense, such as when a complaint plainly reveals that an action is

5

untimely under the governing statute of limitations." *Lewis*, 411

F.3d at 842. Thus, "a district court may dismiss a plaintiff's

complaint at the merit review stage of the case on statute of

limitations grounds if the defense is obvious from the complaint."

*Bracey*, 2024 WL 173520, at *1.

The "limitations period applicable to § 1983 actions brought in

Illinois is the two-year period for general personal injury actions set

forth in 735 ILCS 5/13-202." *Woods v. Illinois Dep't of Child. & Fam.

Servs.*, 710 F.3d 762, 766 (7th Cir. 2013). In the instant case,

Plaintiff's claim against John Doe for his unlawful seizure (and the

unlawful seizure of his property) accrued on the day of his arrest,

April 23, 2024. See *Wallace v. City of Chicago*, 440 F.3d 421, 425

(7th Cir. 2006) ("When a person's Fourth Amendment rights have

been violated by a false arrest, the injury occurs at the time of the

arrest."). Precise accrual dates for Plaintiff's other claims against

Defendant Doe are difficult to pin down, given the undeveloped

nature of those claims; but, in any event, those claims would have

accrued, at the latest, four days after his arrest.

While Plaintiff's Complaint was filed on April 23, 2026—exactly

6

two years from his arrest—Plaintiff's use of a John Doe placeholder creates a statute of limitations issue. "[A] plaintiff who uses placeholders must take account of the clock: substitution must be completed before the statute of limitations expires." *Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022).[1] In *Rodriguez*, the court observed that the plaintiff "dug a hole for himself by not filing suit until time was almost up[,]" pointing out that "[t]he search occurred on November 2, 2016, and the complaint is dated October 24, 2018." *Id.*

Plaintiff in this case has dug an even deeper hole, naming a John Doe defendant in his Complaint the day before the limitations period governing the main claim against that defendant expired. At this point, any amendment of Plaintiff's Complaint naming the officer (or officers) who arrested him would fall necessarily outside of the statute of limitations. Under Seventh Circuit precedent, because the replacement of a John Doe defendant will not "relate

---

[1] As the *Rodriguez* court explained, this well-settled rule derives from Federal Rule of Civil Procedure 15(c)(1)(C)(ii), which allows the "relation back" of an amended complaint where there was a mistake concerning the proper party's identity. "[T]he definition of 'mistake' under Rule 15(c)(1)(C)(ii) does not extend to a John Doe scenario." *Herrera v. Cleveland*, 8 F.4th 493, 498 (7th Cir. 2021).

7

back" to the date of the original complaint, Plaintiff's claims against Defendant Doe are time-barred. See, e.g., *Herrera*, 8 F.4th at 494 (finding that prisoner-plaintiff's amended complaint, replacing John Doe defendants, did not relate back to original complaint and was therefore untimely); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998) ("Mr. Baskin did not make a mistake concerning Officer Sotirakis' identity when he filed his original complaint; he simply did not know the identity of the police officer who pulled him over on January 26, 1995. Accordingly, when Mr. Baskin later amended his complaint to name Officer Sotirakis as a defendant, that amendment did not relate back to the filing of his original complaint. Thus, because Mr. Baskin did not amend his complaint to name Officer Sotirakis as a defendant until after the statute of limitations had expired, the district court properly dismissed his complaint against Officer Sotirakis as untimely.").

Finally, Plaintiff's Complaint does not present any basis upon which the statute of limitations might be equitably tolled. "Equitable tolling halts the limitations clock 'when a litigant has pursued his rights diligently but some extraordinary circumstance

8

prevents him from bringing a timely action.'" *Herrera*, 8 F.4th at 499 (quoting *Xanthopoulos v. United States Dep't of Lab.*, 991 F.3d 823, 831 (7th Cir. 2021)).

To be sure, "when a pro se incarcerated plaintiff seeks to identify unknown defendants and has filed a motion that would help him identify those defendants, and the statute of limitations expires while the motion is pending, equitable tolling can be appropriate." *Bryant v. City of Chicago*, 746 F.3d 239, 243 (7th Cir. 2014) (finding that the district court "should have equitably tolled the statute of limitations because Mr. Bryant acted with reasonable diligence to obtain the missing information"). But Plaintiff here has not described any attempts to identify any one of the 14 (or more) officers who arrested him that he has made in the last two years—a span of time which includes a period in which Plaintiff was *not* incarcerated. By filing his Complaint at the last possible moment, Plaintiff has precluded himself from filing the type of motion at issue in *Bryant,* or otherwise learning the needed identities through discovery. See *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) ("When parties wait until the last minute to comply with

9

a deadline, they are playing with fire.").

In sum, Plaintiff's claims against Defendant John Doe are time-barred because (1) Plaintiff can no longer substitute the proper party within the statute of limitations, and (2) there is no basis for the equitable tolling of the limitations period. Accordingly, Defendant John Doe is DISMISSED as a defendant in this case.

Claims Against Holshouser

Plaintiff attempts to hold Holshouser himself liable for Plaintiff's unlawful arrest. But he does not allege that Holshouser participated in the arrest or that Holshouser even knew Plaintiff was being arrested, let alone knew that he was being arrested without probable cause. It is well-settled that "§ 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003).[2] Holshouser's role as sheriff does not meaningfully change the analysis, as supervisors

---

[2] Though Plaintiff references Defendant Holshouser's "official capacity" in his Complaint, he includes no allegations that support—or even hint at—municipal liability under an official capacity theory. See *Luck v. Rovenstine*, 168 F.3d 323, 326 (7th Cir. 1999) (detailing requirements for prevailing on an official capacity claim against a county sheriff).

10

will only be held liable under § 1983 where they are "personally involved in the constitutional violation." *Bostic v. Murray*, 160 F.4th 831, 841 (7th Cir. 2025). Plaintiff has not alleged that Holshouser was involved in his arrest, either directly or indirectly. Plaintiff's claims of unlawful arrest against Holshouser will therefore be dismissed.

Plaintiff's unreasonable detention claim against Defendant Holshouser fares better. "It is well-established that 'the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite for detention.'" *Matz v. Klotka*, 769 F.3d 517, 527 (7th Cir. 2014) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 126 (1975)). This ordinarily requires a judicial determination of probable cause within 48 hours of a warrantless arrest. *Currie v. Chhabra*, 728 F.3d 626, 627 (7th Cir. 2013).

Plaintiff has alleged that he was held for four to five days without being taken to court for a probable cause hearing. Moreover, Plaintiff has alleged that Holshouser had personal knowledge that there was no probable cause supporting Plaintiff's continued detention, which would satisfy the personal involvement

11

requirement. See *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) ("An official satisfies the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." (cleaned up)); *cf. Luck v. Rovenstine,* 168 F.3d 323, 327 (7th Cir. 1999) (finding sheriff's lack of actual knowledge of the plaintiff's unlawful detention sufficient to defeat individual capacity claim for *Gerstein* violation).

The court therefore finds that Plaintiff has stated a claim against Holshouser for unlawful detention under the Fourth Amendment.

As for Plaintiff's Eighth Amendment claim, he alleges that Holshouser subjected him to "cruel and unusual punishment/treatment" when his wallet and cell phone were withheld following Plaintiff's release from the county jail.

"The Eighth Amendment protects convicted prisoners from cruel and unusual punishments." *Perkins v. Johnston,* 431 F. Supp. 2d 898, 901 (N.D. Ind. 2006) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979)). Thus, Plaintiff's "Eighth Amendment claim falls

12

away because that amendment applies only to a convicted prisoner rather than a pretrial detainee whose rights receive the protection of due process." *Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998).

To the extent Plaintiff may be claiming that the confiscation of his keys and wallet amounted to a due process violation, he has failed to allege that Holshouser himself played any role therein. He alleges that, upon his release, his cell phone and wallet were "kept, by Montgomery Co. Sheriff's Dept., because they told me 'they wanted to hold onto them.'"

Finally, "to state a claim for equal protection based on race, Plaintiff must allege that 'he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class.'" *Martin v. City of Chicago*, 2017 WL 782992, at *3 (N.D. Ill. Feb. 28, 2017) (quoting *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005)). While Plaintiff has alleged that he is Black, he does not allege that he was treated differently—by anyone—from otherwise similarly situated white arrestees. Nor has he alleged any

facts from which it might be plausibly alleged that his race was the basis of any of the conduct alleged herein. His equal protection claim must be dismissed.

Claims Against Affrunti

Plaintiff cannot state a claim against Affrunti for unlawful detention based on a *Gerstein* violation. Affrunti did not cause or participate in Plaintiff's detention in the county jail. See *Hinsdale v. Vill. of Westchester, Illinois*, 2017 WL 991489, at *5 (N.D. Ill. Mar. 15, 2017); see also *Armstrong*, 152 F.3d at 579 ("[J]ailers hold not only the keys to the jail cell, but also the knowledge of who sits in the jail and for how long they have sat there. They are the ones directly depriving detainees of liberty. . . . The jail acts at its own peril if it passes responsibility off on another party—whether the courts or the prosecutor.").

Still, Plaintiff has alleged that Affrunti knew Plaintiff had been arrested and knew that he had not been charged or brought to court. In other words, Affrunti knew that there was *Gerstein* violation in process, but did nothing.

"A failure to intervene under § 1983 requires only that

14

plaintiffs allege that the defendants knew that a constitutional violation was committed and had a realistic opportunity to prevent it." *Fulton v. Bartik*, 547 F. Supp. 3d 799, 816 (N.D. Ill. 2021) (citing *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017)). "Failure to intervene claims can cast a wide participant net[,]" including prosecutors. *Id.* at 817 (finding the plaintiff stated a claim for failure to intervene where it could be plausibly inferred that prosecutors had opportunity to intervene); see *Heidelberg v. Manias*, 503 F. Supp. 3d 758, 791 (C.D. Ill. 2020) (advancing failure to intervene claim against prosecutors past dismissal stage).

The court can plausibly infer that Affrunti, as State's Attorney for Montgomery County, even more so than a rank-and-file prosecutor, had the realistic opportunity to arrange for detainees in the county jail to be brought before the court. Accordingly, the court finds that Plaintiff has stated a claim against Affrunti for failing to intervene in his unlawful detention.

**IT IS THEREFORE ORDERED:**

1.     Pursuant to its review, the Court finds that Plaintiff's Complaint states a claim for (a) a violation of his Fourth

Amendment right to be free from unlawful detention against Defendant Tyson Holshouser, and (b) a failure to intervene in that violation by Defendant Andrew P. Affrunti. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2.    The Clerk is directed to DISMISS John Doe as a defendant in this case.

3.    The Clerk is directed to effect service of process on Defendants Holshouser and Affrunti pursuant to the Court's standard procedures.

4.    This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5.    The Court will attempt service on Defendants by mailing

waivers of service to them. Defendants have sixty (60) days from the date the waiver is sent to file an answer. If Defendants have not filed answers or appeared through counsel within ninety (90) days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an Order setting discovery and dispositive motion deadlines.

6.      With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7.      Defendants shall file an answer within sixty (60) days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings

shall be to the issues and claims stated in this opinion. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

8.    This District uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to defense counsel copies of motions and other papers that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the Court has entered a Scheduling Order, which will explain the discovery process in more detail.

9.    Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

10.    Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11.    If a Defendant fails to sign and return a waiver of service to the Clerk within thirty (30) days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal Service on that Defendant and will require that Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

12.    The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

ENTERED May 19, 2026.

s/ *Sue E. Myerscough*

_____

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**